Mr. Melendi, it is my sincere hope that this is the court's last Hurricane Ike case. What year was that? It was in 2008, Your Honor. Well, I'm not going to finish with Katrina, so I don't think Ike's gone away either. The trial court below committed error when it dismissed my client's claims on summary judgment because we put on evidence demonstrating a fact question on both the contents portion of our policy claim as well as the claim for the penalty interest, the 18% penalty interest under the prompt payment statute of the Texas Insurance Code. The district court, or excuse me, Nautilus' motion for summary judgment had one ground, and only one ground, and that was we invoked the appraisal process, we paid the award, therefore we are not liable for any other claims that the plaintiffs have against them. And that's just not the law in Texas. There are certain circumstances when the issuance and payment of an appraisal award can stop a breach of contract claim, but that's all it can do. Remember, the law is very clear that all an appraisal award does is establish the amount of damages that are owed. That's it. It doesn't establish liability one way or the other. Did you or your appraiser object to the exclusion of contents damages once you received the check? No, we did not, Your Honor, but we didn't need to because it was not the proper subject of that appraisal. Remember, the appraisal provision . . . Had you ever notified Nautilus up until that point that you even had a contents claim? Yes, we had. In our petition, we sued for breach of . . . No, I'm not asking you about the lawsuit. I'm saying had you ever notified them that you had a contents claim, Nautilus, before the lawsuit begins? We made a pre-suit demand that included contents, yes. Okay, what's the record site for that? Well, I don't believe that's in the record. The way it came up in the context of the summary judgment proceedings is in their motion for summary judgment, they said, you know, now that the appraisal award has been issued, this is the first time that they've said that they have a claim for breach of contract on the contents. And we responded by saying, no, no, no. Back two years before that, in May of 2011, it was part of our disclosure responses, and that's in the record in our summary judgment response. So the position that Nautilus took, that there was no claim for contents made, wasn't in their motion for summary judgment. It was in their reply to our response. And, of course, at that point, you know, the proceeding was wrapped up with their reply. And so it wasn't a proper round to be made at that point. If they wanted to make the point that, you know, my clients waived or never made a claim for contents, they should have done it in their motion for summary judgment in the principal brief. Instead, their motion just said appraisal award paid, King's X on everything else. There was no evidence that they complied with any other aspect of the policy other than making payments, both pre-litigation and on the appraisal award. Importantly, the policy obligated Nautilus to do certain things. It had to request information that it needed to properly adjust the claim, presumably would have included the contents. It had to request a proof of loss. Nautilus made the point in his reply. When I looked at the policy, a duty is an event of loss. The requirement is that you've got to give them prompt notice of the loss or damage, including a description of the property involved. Then they can request a complete inventory. So as to that first 3A element, you made a request that included content damage? Yes, my client submitted a claim for Hurricane Ike damage. Now, there's nothing in the record that says it's only for structural or structural contents and other things. It says we've got a bunch of damage out here. But the description of the property, as required by the policy, included contents? Yes, contents was definitely a covered item under the policy. No, but your description that you gave them notice of, even if it didn't distinguish title-wise, it did contain items and property items described inside the house. Or I'm sorry, inside the two properties. Well, the record is not going to speak to that, Your Honor. The claim was made through my client's insurance agent. That's how it was made, which is very typical in these scenarios. The way Nautilus was handling these claims pretty much allowed it to stick its head in the sand with respect to a lot of things. One of them was whether or not the insurer had a contents claim. Nautilus had no adjusters in Texas. It hired independent adjusters who they were, frankly, working like dogs. The adjuster who inspected my client's properties spent a very short amount of time on both commercial properties, big properties. He testified in his deposition that Nautilus had him inspecting five to six properties a day, commercial properties a day. And he was writing the reports at night. After the adjuster came out and inspected the loss, that's the last time my clients heard from Nautilus or the adjuster until they got the checks and they never heard from him again after that. Once my clients got the checks, well, then, of course, they complained to their agent that the amounts weren't enough for the structure, what about contents, the whole shebang. And, of course, there's no response from Nautilus because they don't have a presence in Texas. So when you're an adjuster, working hurricane claims, and you are experienced like this adjuster was. And he testified that he understood that part of the damages would include contents because of the catastrophic nature of the loss. And he testified in his deposition, which is in the record, after looking at some pictures, that there were security cameras that had been damaged by the hurricane, covered under the policy, and that he just missed them. That's what he testified to. He just missed them. So, you know, yes, the duty to submit the claim is on the insured. But after that, because of the disparity between the sophistication, the bargaining powers of the two parties, the carrier is the one that's got to say, look, okay, what is your claim? Do you have structure? Do you have contents? Do you have loss of business income? You can't just send an independent adjuster who's not affiliated with your company out and say, okay, spend 30 minutes there. Write a report at night, along with the other five or six that you inspected that day, and then that's it. Counsel, you have articulated a fair way for insurance adjustment of claims to work, but I'm not sure either side has given us any case law, certainly you would be the one presenting it, that says that it's an insurance company's obligation to identify matters for which no claim has been made. And so, you know, at some point, and one of the questions in this case is how soon, it's going to be up to the insurer to indicate what is not, what Nautilus, or the insurance company, has not properly paid for or has not properly reviewed for a possible claim. And the decision, obviously, by the district court is that came up too late. Well, Your Honor. Do you have any support that it was Nautilus' obligation in adjusting this, independent of your client's obligation to make the claim itself, that they had to identify things for which no precise claim has been made? Yes, Your Honor, I do. The Texas Supreme Court has spoken on this issue numerous times, Giles and several other opinions, where the court has said part of the duty of good faith and fair dealing on the insurance company is to conduct a thorough and reasonable investigation. And in order to do that, you can't just stick your head in the sand and look at just one aspect of the loss. You've got to ask questions. You have to request information. And Nautilus' own policy requires it to do that. If Nautilus complies with its policy and says, give me information about your claim, which it never did, the policy and the insurance code requires it to do that, give me information about your claim, then, of course, my clients are going to include contents among the things that they. . . Logically, if Evans goes out and he looks at it and he, whatever his testimony was, I take it he said nothing about whether a flood insurer was covering anything, but he says this is what you owe, and then they just pay, they would waive the proof of loss requirement, logically, if they're going to pay the whole thing. Well, but I'm not even on proof of loss yet, Your Honor, because the policy says you've just got to get information. You're faulting them for not requesting things the policy says they can request, but why would they request anything if they're going to pay in full? Well, because, first of all, it's not their intention to pay full. That's our point, is that there's a reason why it was structured this way, so that they could avoid the questions, avoid the information coming in that would demonstrate that their payments would be underpayments. One of the realities in this sort of event is that you have flood insurance and you have wind insurance, and certain things are paid by each, and if that's incorrect, if Norlis would have covered some things, then flood insurance policy would have covered as well, unless I have it backwards, but I take it this is the wind insurance we're talking about here. I'm not sure how much the adjuster would have known case by case on that, but at some stage it's someone's obligation, and you're saying it's Norlis, to get this right. That's at least one explanation as to why contents weren't covered and what Norlis was looking at, whether that was right or wrong, and even whether that's why it happened, but the issue before us is legally who is responsible if there were an oversight. There's been no determination yet that you were owed anything more. Whose responsibility is that? The prompt payment statute under the Texas Insurance Code, Chapter 542, is designed to make sure that insurers are not only paid promptly, but sufficiently as well. That's why the first requirement, this is not something that the carrier can waive. The first requirement is that the carrier has to request information. That's part of doing a reasonable investigation. It's one of the many ways in which the Texas Insurance Code has codified that aspect of the investigation, and courts have said, including the Devonshire Court out of the Northern District of Texas, which I have a site for, have said, look, even if you don't request information, you have violated Chapter 542 because it's an important part of what they have to do. Insureds don't know. They don't know how to make sure their claim is sufficiently investigated. That's not even something that we can reasonably expect for them to know. That's why the courts have said, look, there's a disparity here. You've got the insurance companies with all the power, all the resources, all the bargaining power, and you've got the insureds who really don't know anything about this stuff. So under Chapter 542, the first thing you've got to do is request the information, and then once you get the information you need in order to get a proper proof of loss, then that's when the time period begins to tick on when you have to submit your payment. It's a very important part of the process. So, Your Honor, it is true. The record is not going to tell you that my clients called up Nautilus and said, we have structure, we have content, we have loss of business income. What it says is on the day of a major catastrophe in which their businesses were all ruined and things were going crazy, they said, we need to submit a claim. And it's their burden to look into it sufficiently. Go ahead, counsel. Oh, I'm sorry. I thought I was out of time. Well, but I take it you were ceding it back. It's not an obligation. No, no, no. So in response to their motion for summary judgment, we demonstrated that not only did they fail to request information, but they failed to make the time, it's both the pre-lawsuit payments, they failed to make them within the deadline set out in the policy and the deadline set out under the prompt payment statute. Now, on those early payments and the alleged 542 violation, did you object on that ground to the magistrate's report and recommendation? Yes. We put on, in response to Nautilus' motion for summary judgment, we said our 542 claim is supported by this evidence that they violate these provisions of Chapter 542. In all these cases that Nautilus relies on where the courts have held, oh, you're stopped or you don't get an 18% penalty when there's an appraisal award, well, they don't really say that. What they say is, look, a 542 claim, prompt payment claim, is just like anything else. If it's challenged on summary judgment, you need to put on evidence of it. You look at Breshears. You look at the Amin case. You look at this court's decision in Blum's. In every single one of those cases, the court said, look, you don't just get a remedy because the appraisal award demonstrates that the liability was greater than what they originally paid. That's not how it works. You have to put on more evidence. You have to show that there was a pre-appraisal breach of the policy or a pre-appraisal breach of Chapter 542. The specific breach you're pointing to now is a breach of what provision? You talk about one failure to investigate, two failure to pay contents. So what's the breach you're saying existed that triggered the 542? I see I'm out of time there. May I respond? Please. Under 542, the breach is, one, failure to request information on the claim from the client, and two, failure to timely pay. They just completely missed the timeline set out in the Prompt Payment Claims Act, even given the extra 15 days that they get because it was a catastrophe. They missed both of those. So that is what triggers 542. And we put on substantial evidence in both of those. Do you have time for rebuttal? May it please the Court, and Mr. Faubus also, and I echo his sentiment that hopefully this is your last Hurricane Ike case. He and I talked about it before, and this is each of our last ones, and we've been working together on this one for a while. I'm pretty sure we handed down a Katrina case yesterday. I'm sorry to hear that. Generally, Mr. Faubus's statement that his case is different than Blum's and Annemey and Brashear's is factually incorrect. In each of those cases, and I'm specifically going to focus on Blum's and on the United Neurology opinion, United Neurology v. Hartford, which is a Southern District opinion that this Court affirmed without an opinion about three weeks ago, in each of those cases, the complaints that were presented to this Court were the exact same type of complaints that Mr. Faubus's client raises here, pre-appraisal breach of Chapter 542, pre-appraisal breaches of the insurance code, the Texas Deceptive Trade Practices Act, complaints about the timeliness of the invocation of the appraisal, complaints about consequential damages, complaints about claims that were not raised timely. All of those claims were in Blum's and in United Neurology, and in each of those cases, the District Court granted summary judgment, and in each of those cases, this Court affirmed. In United Neurology in particular, the claim was that a business income claim wasn't made until three years after the storm, and it was not part of the appraisal. And in that court, Judge Harmon, out of the Southern District, issued a very long opinion and explained why, in this case, there was no evidence to support that claim and it was untimely. That's exactly the case we have here with the contents claim. With regard to the contents claim, Mr. Faubus says that a claim was made. A claim was, in fact, not made for the contents. The reason it's not in the record is that it simply doesn't exist. There was no pre-suit demand. In fact, as it shows in our brief, when Nautilus was first sued, was the first that was aware that it had a problem. The adjusters called and asked Mr. Faubus' office, is there a demand, is there an estimate, what did we miss? And after kind of putting them on for a month about what they were going to present them, because my client's desire was to resolve it without having to hire a lawyer, they were eventually told, we don't have an estimate. Your lawyer is going to have to answer the lawsuit. The case went into litigation. Nautilus demanded appraisal. They resisted. This case went on long enough that it went through the entire discovery process while the motion to compel appraisal was pending. It was only after the discovery process was complete, all the way to where we had filed a joint pretrial order, that the court ordered us to appraise the case. There was no discovery on contents. No documents were produced. No estimates were made. They designated no experts. When asked direct questions and depositions, Mr. and Mrs. Quibito both mentioned nothing about contents. The reason the contents claim wasn't part of the appraisal is a claim simply wasn't made. Respectfully, Mr. Faubus has the duties reversed as to who has to do what on a claim. This court has held, and the Texas Supreme Court has held, that the insured has a duty to make a claim. That duty encompasses telling the carrier what they are claiming was damaged. The carrier has no duty to fish around and ask what kind of claims they've made. What provision of this policy, being as specific as possible, contains that element, and what's the Supreme Court, you say, that's so clear on that point? On that issue, what I'm talking about is, and it's cited in our brief, in Ulico v. Allied Pilots, and that's on page 25 of our brief, the site is 262 Southwest 2nd, 773. This is a quote from the Supreme Court, 2008. And the corresponding policy provision here, is it the one that I'd mentioned? Yes. It's the terms and conditions. It's the proof of loss language where it sets out the duties in event of loss that Judge Higginson, you mentioned earlier. And with regard to the proof of loss issue, the record reflects, and the magistrate mentioned this in his opinion, and they did not object on this issue to the magistrate's opinion, that Nautilus requested proof of loss multiple times, and that they outright refused to sign it. Even after litigation commenced, they outright refused to sign a proof of loss. And that's in the record, and the magistrate mentions that in his opinion. And that's something they didn't object to. Simply put, on the contents issue, Nautilus was under no duty to investigate that further. This was a wind policy, there was a flood claim, and as mentioned in our brief, they made a contents claim with the flood carrier. This building had five feet of water in it from flood. All the contents claim was paid by their flood carrier. That's the reason there was no contents claim made here, Your Honor, until after the appraisal was completed. It wasn't mentioned in the joint pretrial order. Yes, sir. No, I appreciate your description. I guess I was wondering, what does your policy say about the fact that if there is a flood insurer, we won't be liable? My policy excludes damage by flood. My policy doesn't address what happens if there is a combined wind and flood loss. Okay. So my understanding is the claim was made through the agent that sold the policy, or at least the agent servicing it. Is there any paperwork, is there anything in the record that shows what was submitted to Nautilus initially? Not that it's in the record of which I'm aware, no, Judge. Is that your understanding is how the claim was made? Maybe orally by the agent to Nautilus? The claim was made in writing to Nautilus by the agent. But it's not part of this record? It is my understanding that that is not part of the record. Would that not have shown something? I believe it potentially would show something. A fairly general question, sort of like what is truth, if you were here for the previous argument. Yes, I was. I wasn't sure how I would have answered the question I just asked you. Would it not have shown the nature of the claim? Your Honor, it may not have. It depends upon what the agent wrote on the form. General practices. A copy of intent to the policyholder? It depends on that agent's practice. A copy would have been sent by the agent to my client, and it would have been given to Mr. Evans, the adjuster who adjusted the claim. I know we're off the record. Thank you. With regard to the contents claim, simply put, it wasn't raised. We admit it was not part of the appraisal. It was simply not raised by anybody. In his brief – What do you mean by we know it wasn't part of the appraisal? Do we know what direction the appraisal process was told just to look at the structure or just to look at non-contents, however you would exclude contents? No, sir. The appraisal was a court-ordered appraisal, and the motion to compel appraisal asked the court to order Quibido to appraise the claims at issue in the lawsuit, and the court order was to appraise the claims at issue in this lawsuit and to abate the case. So if it was part of the lawsuit, it was part of the appraisal. At that point, Mr. Quibido's brief asserts that his appraiser didn't raise it with our appraiser or the umpire. It's his duty to make that claim at that point if it's still in the lawsuit. The only direction would have been what you just articulated, to appraise the claims involved in this lawsuit. Correct. So if it was part of the lawsuit, it was subject to the scope of appraisal. If it was not – and mind you, this is a lawsuit that went through the discovery process. A pretrial order was filed. A proposed jury charge was filed. There's simply no mention, and the pretrial order is in the record, and those documents are in the record. The deposition testimony is in the record. There's simply no mention of a contents claim being made in any of those documentations, and all of those items were in the record at the time the court ordered appraisal. Where in the record does it reflect when you first became aware Quibido was making a contents claim? We first became aware that Mr. Quibido was making a contents claim after the appraisal award was issued and after we made the payment and we asked him to dismiss the case. And in response to his motion for trial setting, we opposed that and asked the court – we opposed that and asserted we were first made aware of the contents claim post-appraisal. These overpayments that were made – we'll talk about this maybe in the last Ike case. This was the first insurance case which has that fact in it. Anything in the record about that, or am I sending you off the record on that one? Why was there no seeking of reimbursement, or maybe there was? Just what do we know about the overpayment and the nature of what the insurance company did about it? The insurance company intentionally overpaid these claims, frankly, because they thought it was more expedient to pay the replacement cost value even though it was an actual cash value up front. What percentage was that total payment of? It's not based – it wasn't based on a percentage. I'll tell you the total overpayment was $10,533.44 out of about $85,000. And that was – this is a replacement – these are replacement cost policies that are written in such a fashion that all the insured is entitled to up front is the actual cash value of the damaged property. And if they do the work within six months, they're entitled to recoup the full replacement value of the policy. My client made the decision to pay the replacement cost value up front, and Mr. Quibito simply never did the work. They also didn't charge him all of the deductibles on purpose because he was underinsured on his sign. His sign coverage was only $1,000. Mr. Evans estimated that that sign was – actually, he didn't estimate. He received a receipt from Mr. Quibito that it was a $2,900 sign. So instead of charging the $2,500 deductible, they kind of, for lack of a better phrase, ate $1,900 of the deductible to balance that out. And that brings up – if that answers Your Honor's question – that brings up another point that I would like to raise. Mr. Faubus asserted that Nautilus never asked for additional information. That's simply not true. As shown in our brief, on October 14th when he inspected the site, Mr. Quibito was asked by Mr. Evans for evidence for a receipt regarding the sign. He had said he had to have some septic repairs and some other information. And Mr. Quibito provided that information on December 1st. And Mr. Quibito's deposition testimony, which is in the record and in our brief, corroborates that. So to the extent you want to talk about 542 timelines based upon asking for additional information, which is what Mr. Faubus says, and I believe is correct, you should do, those run from December 1st when the record shows Mr. Quibito provided the information asked for in October. I'd like to turn now to his 542 claims generally while I have a few minutes left. These exact claims are simply precluded as a matter of law. These kind of pre-appraisal 542 claims. And the reason is this Court has held that you can't make a Chapter 542 claim until the insurer is found liable for breach of contract. And I'm talking about the Tramago v. Euler-Hermes case from 2015, and this is in our brief. And that cites to the Higginbotham v. Stank Farm case, which is a 1997 case from this Court. While it is true that there is no good faith defense to failing to comply with the 542 deadlines, these cases make clear that the insurer first has to be found liable for breach of contract. And there's simply no finding that they're liable for breach of contract, and the only breach of contract claim raised here today deals with the contents claim. Without that finding, 542 claims are simply barred as a matter of law in these type cases, and that was what was held in United Neurology by the District Court, and that was affirmed last month by this Court. Beyond the fact that they're simply precluded as a matter of law in this situation, these claims were not properly preserved for presentation to this Court. The 542 claims were not present in the pretrial order. There are vague references to things that someone maybe could find to be a 542 claim, but the necessary specificity due to the arcane nature of the chapter requires that he specifically set out which section of 542 he asserts we violate. There's half a dozen different sections nowhere in the pretrial order or in the pleadings is there a specific reference to any section, specific section of 542 that it's alleged we violate, whether it's the failure to request information he mentioned here today, a failure to pay. None of that is present. In response to this argument, Mr. Quibito has referenced other sections where he says that it was close enough in the pretrial order. In the contested issue of facts section, he raises questions about 541 specifically, not Chapter 542. He asserts that there are questions about 542 in the jury charge. That's simply not true. There is no Chapter 542 question in the proposed jury charge. I'll submit to this Court that if the case had actually been tried and if the case was presented to the jury based on the questions present, there would not be an opportunity for a 542 claim. There simply wasn't a question asked. He says he has predicate questions. Well, there's a couple of questions about when did Nautilus request the information, but no follow-through. In order to have a proper Chapter 542 charge, the charge must specifically establish that the insurer is liable for the claim and that the insurer violated the specific section of the act alleged. And that's from Salinas v. State Farm, which is a case from this Court in 2002. That simply wasn't present. There simply wasn't a 542 claim being made at that time. After that, the case went to appraisal. The case was abated. After appraisal, when our summary judgment was filed, he then, after the summary judgment was granted by the magistrate, stated that he has to object to the 542 issue. The only objection he raised on the 542 issue was he asserted, moreover, the magistrate erred in dismissing plaintiff's claim for penalty interest under 542 of the Texas Insurance Code because, as demonstrated in plaintiff's summary judgment response, they are entitled to that interest for the time period preceding defendant's untimely payments and on the amount of the appraisal award up until defendant invoked appraisal. It doesn't mention any specific sections. To the extent it's anything, to the extent that is anything, that is certainly not a failure to investigate under 542. Could it be a Section 058 claim, which is within 75 days of having all the information you have to pay? I'm willing to admit that when I read that, that's what I think. I don't know that that's the standard. But even then, that runs off the date from which we had all the information, and the record reflects that information was requested on October 14th. It was given on December 1st, and the payments were made on January 6th and 8th. As to both properties, even the Bridge City property? The payments were made on January 6th and 8th, yes. The additional information was received on December 1. I believe the only information that was provided was as to one property. I only have about a minute and a half left, so just the only other thing I would like to add is he asserts that he complained to the agent. There's no evidence in the record that the agent ever asked Nautilus to do anything. The simple fact is, and it's in the record and it's in the brief, is Nautilus paid the amounts. They never heard anything again until they were served with a lawsuit. Mr. Quibito admitted he never tried to contact Mr. Evans. He never tried to contact Nautilus. He just assumed his agent would handle it. Well, that's his agent, not our agent, and we had no record of contact by the agent. The record is devoid of anything from the agent one way or the other. It's simply unfair to require Nautilus to continue to chase someone who never made a claim about any of these issues until a suit was brought. Thank you. Thank you, Counsel. Mr. Faubus. Yes, Your Honor. Your Honor asked where in the record it shows what claim was made. In fact, it is in the record. It was attached to my response to the motion for summary judgment as Exhibit E. It is the diary. Nautilus's activity log or diary. They go by different terms. But it is the record site is 1396, and all it says is new claim created. Claim opened. It's September 22, 2008. Now, that's very general, and there's a reason why that's general. Because when a claim is being made to a carrier for a hurricane loss, it's a wind claim. That's what is open, a wind claim, not a structure claim and then a separate context claim. Those are never broken up into separate claim numbers. They're all part of the same claim. You've got a hurricane that struck a building. Well, what coverages are invoked by that catastrophe? All of them would be under the same claim number. With respect to my client pursuing the contents claim in the litigation, the record at 1348 shows that we filed initial disclosures back in May of 2011, which was a year or so before the summary judgment proceedings, in which we said that our clients were entitled to contents damages. This idea of the proof of loss, this is important, Your Honors, because what the policies say is you have to submit a proof of loss to us if we request one, or when we request one, excuse me. Now, before this lawsuit was filed, Nautilus never requested a proof of loss. That did not happen. They requested proof of loss in, I think, a very unusual fashion after the lawsuit was filed, but not before, certainly not during when the claim was being adjusted. So that needs to be corrected. The bottom line is that when you've got a claim open under a windstorm policy, it is the carrier's duty to conduct a proper and reasonable investigation. What were the contents? What were they? What types of things or the amount? One of the important items were security cameras, which were up higher than the flood level, which is why Nautilus, as independent adjuster, admitted that he missed those as being covered damage contents. Other things would be they had an alarm system, I believe, that was in a closet above the flood line, other things of that nature. Clearly, anything that was lower than the flood level would not be covered under these policies, but a carrier does not have the right to say, oh, flood. Well, we don't even have to look at that. They still have to go in and try to make it. I don't think of those as necessarily being contents. Maybe that is, but. Contents are anything that you can detach. So technically your dryer or your oven, those are all contents under insurance policies. Importantly, Your Honors, here's what Nautilus and many other insurance companies' positions is today with respect to 542, the prompt payment claim statute. You enumerated some. I'm just trying to get a sense of what we're talking about here. At best, your client was not very focused on, to be kind to, your argument on contents. And I'm just trying to figure out what was he walking away from. And all you've told me is the way he had some lamps, security things, and so forth. But give me a better sense of what really was in those contents that you're. . . Our contents. . . You're now deciding. . . Were in the amount of about $50,000. That's what we had itemized, Your Honor. And I don't. . . We itemized the contents covered under this policy at around $50,000. That's a dollar amount you put on them. What were they other than. . . Well, the security cameras and the. . . This is a daycare. So there were a lot of requirements for security by the state that they had to comply with. Those alone were very expensive. You can't get off of security cameras. Was there anything else in that place? Well, yes, sir. You know, they had books. They had a lot of things that were damaged by wind coming or water coming through openings caused by wind. I don't get a sense of what you're talking about. I understand. Your Honor, this is an important point because you just heard counsel say an insurance company is not liable under the prompt payments claim statute unless I show that they're liable. Okay? I've got to show that they're liable. In other words, that they owe money under the policy before they have to pay that 18% penalty. But they're also saying, however, when there's an appraisal award, you are stopped from pursuing your breach of contract claim. Always. That's what they're saying. So in other words, they're saying. . . As to payments that are untimely thereafter. To any claims. That's what they're saying. Once there's an appraisal award that's paid, they're saying, and their position in this lawsuit is, we do not owe 18% penalty on anything. Because they're saying that we are stopped from pursuing our breach of contract claim. But if that's the case, how can we ever, if there's an appraisal award, prove the liability under the contract in order to get the 18% penalty? You can't. It's impossible. When the appraisal was ordered, it's honest that the order was to appraise the claims. And then they went about it to do that. And it didn't include contents. When did you bring that to the attention of anyone that it wasn't included in the appraisal? In our motion for trial setting. I'm sorry? We filed a motion for trial setting after the appraisal award came out. In which we said that that issue was still needing to be decided. In the summary judgment response, we pointed out, look, this was not something that was part of the appraisal because they never even tried to investigate that claim. So there was not a disagreement on the amount. I understand that. It was omitted. I'm just curious as to why, when the appraisal was out, when did you object to the appraisal being incomplete? Well, Your Honor, I didn't view it as incomplete. Because it wasn't, the contents were not the proper subject of the appraisal. Because there was no disagreement on that amount because they never even offered any money or looked into it at all. But I thought the order for appraisal was to have claims. You had a claim for contents, but now you, but that wasn't a subject. This was a claim that wasn't subject to that. I see Your Honor's point, and I think it's important to address. The policy speaks to the purpose of the appraisal. And it says, when we disagree on the amount, meaning you say it's X amount, we say it's Y, then either of us can force the other. You didn't have an agreement with regard to contents. They didn't even know you had a contents claim. No, that's my point, Your Honor. Because they never looked into it and came out with a number, it wasn't even the proper subject of an appraisal. They just wholly failed to comply with their duties with respect to the contents claim. They didn't look at it. They didn't do anything about it. Now, but that brings up another important point, Judge, and I know I'm out of time. However, you can't, there are very few circumstances in which you as an insured can say no to appraisal. If the insurance company invokes appraisal, you have to go through that process, which is fine, except that now you have insurance companies like this one saying, oh, but once we get that appraisal award and pay it, King's X. Because you can't establish liability because you're stopping a breach of contract claim, and so you never get 18% penalty. So it doesn't matter what the insurance company did before that. Under this argument, if they invoke and pay the appraisal award, you don't ever get the 18% penalty or the attorney's fees required to sue the insurance company to even get them to invoke the appraisal process. All right, sir. Thank you, Your Honor. Appreciate you both being here.